[Civ. No. 1091.   Fifth Dist.   June 24, 1969.]

MABEL WATSON   et al., Plaintiffs and Appellants, v. COUNTY OF MERCED et al., Defendants and Respondents.

Winton & Minor, Greene, Ide, Kelley & Zavala and Clark F. Ide for Plaintiffs and Appellants.

Williard B. Treadwell, County Counsel, and Samuel K. Brantley, Deputy County Counsel, for Defendants and Respondents.

CONLEY, P. J.—The 18 plaintiffs and appellants, owners of mobilehomes, sued the County of Merced, County Planning Director Hal Colwell, and District Attorney Pat Hallford, to secure a judgment that Merced County Ordinance No. 555 purporte·lly imposing a license fee on mobilehomes not located

in mobilehome parks and outside of unincorporated areas in Merced County is improper in that such ordinance violates California Constitution, article XI, section 11, because the State of California has preempted the field, and that the county planning director and the Merced District Attorney have no "right, power, or authority to enforce said ordinance." One claim is that the county had no authority to enact the ordinance because the state had preempted the field, and the second direction of the attack is based on the contention that the proposed license fee for such mobilehomes does not comply with the permission given by the state to the county to regulate this matter in that the proposed fee is too high.

It will be immediately seen that the two bases of attack are inconsistent, which, in fact, is true. It cannot be denied that, generally speaking, the state has taken over the question of taxing mobilehomes and regulating their major uses in the state, but, unfortunately for the validity of the first contention of the plaintiffs, the Legislature has specifically authorized what Merced County Ordinance No. 555 has done. ▆ If and when a state has preempted a field of legislation generally, but has also specifically excepted one or more functions and has provided that counties and cities may legislate as to such specific functions, the exception is sound and viable and neither the state nor any of its citizens can thereafter except to the performance of such specific functions by the smaller unit. It is true, as alleged in the complaint, that the State of California has generally exercised control over this field through the following enactments:

(A) California Health and Safety Code sections 18000 through 18475;

(B) California Vehicle Code, division 3, pertaining to the licensing of vehicles, including mobilehomes;

(C) Title 8, California Administrative Code, beginning with sections 16250 and 23000.

However, section 18300 (formerly 18010) of the Health and Safety Code provides as follows: "The provisions of this part shall not prevent local authorities of any city, county, or city and county, within the reasonable exercise of their police powers:

"(a) From prohibiting mobilehomes . . . within all or certain zones within such city, county, or city and county . . . ; or

"(.          .     .     .     .     .     .     .     .     .     .

"(c) From requiring a permit to use a mobilehome . . .

outside a mobilehome park, . . . and require a permit therefor commensurate with the cost of enforcing this part and local ordinance with reference to the use of mobilehomes. . . .''

Ordinance No. 555 of Merced County, which is attacked in this suit, regulates mobilehomes in unincorporated areas outside of mobilehome parks by imposing a license fee of 10 cents per square foot of useable space per year in such mobilehomes. Evidence indicated that the average fee resulting from an application of the ordinance is $42 per trailer. Other evidence shows that the expected cost to the county planning department and health department will be $50.90 per trailer; the detail of expected costs is set forth in defendants' exhibit ''A.'' Of this total cost, $35.50 represents a cost which will be repeated every year, and $15.40, the health department costs, which occur only once when the application is initiated.

The trial court held that the ordinance was proper within the permitted limit of action by the local legislative body, the Board of Supervisors of Merced County. The trial judge gave his reasons for approving the ordinance as follows: ''Section 18300 also provides that the permit fee may be commensurate with the cost of enforcing a local ordinance with reference to the use of mobile homes and camp cars.

''There is evidence that MERCED COUNTY has given notice to the Department of Housing and Community Development that the COUNTY will assume the responsibility for enforcement of Part 2.1. It has also passed the ordinance which is the subject of this action.

''In view of the notice given to the State, the permit fee is authorized by Section 18300 to be such amount as will reimburse the COUNTY OF MERCED for the cost of enforcing its ordinance (No. 555) and Division 13, Part 2.1 of the California Health and Safety Code.

''The testimony of the Director of the Planning Department was to the effect that the fee determined by the Board of Supervisors of Merced County was that recommended by the Merced County Planning Commission; further that part of it was required as the cost of enforcing Ordinance 555; that the average cost per permit expected to be issued under Ordinance 555 is $50.90 (Def. Exh A); that the average fee paid by the 321 who had registered at the time of trial was $42.00.

''It is argued that the fees must be incorrect because they may exceed the *ad valorem* taxes properly imposed by the State. It is conceivable that the work undertaken under the ordinance and in enforcement of Part 2.1 *could* cost more per

trailer than the sum collected by the State on each trailer for *ad valorem* taxes.

"Counsel for plaintiffs argues that the cost analysis (De*h*'s Exh.A) is 'loaded', that the labor for a twenty minute inspection of sewer, water and electrical hookups cannot cost $11.00, etc.

"The Court will not attempt to determine whether the judgment of the legislative body was precisely correct. So long as the determination made by the Supervisors is reasonable and for a proper purpose it will not be disturbed.

"Even if the testimony of the Planning Director indicated costs which were somewhat less than the amount collected the Court would not interfere unless the disparity were unreasonable.

"A longer history and greater particularity in evidence would be required to convince that the fees charged were so disproportionate to the cost as to be unreasonable.

"Upon this ground the ordinance is not held to be invalid."

The attack in appellants' case is based in part upon the following specific analysis of evidence adduced by the appellants:

(1) It is said that six years before the enactment of the presently attacked ordinance there was a prior ordinance, still effective, which applied a cost of one cent per square foot of living room and that the added necessary work of imposing a fee under the present ordinance does not correspond to any similarly increased work necessary to be done by the planning commission;

(2) The Merced County Planning Director testified in a former case that in his opinion it would not take more than $28 000 to enforce the ordinance;

(3) The planning director had testified that a part of the permit fee is a special use permit fee for the county, granting a privilege.

The fact that a county has not fully regulated a situation which it has jurisdiction to control, or that a former fee is not enough to meet the expenses of regulation, does not prevent a county from increasing its fees for regulation to a reasonable amount. (*In re Carlson,* 87 Cal.App. 584 [262 P. 792].) Both the facts and the law support the findings and judgment of the trial court. Every presumption and intendment is in favor of upholding the validity of a license tax ordinance. (*County of Sacramento* v. *City of Sacramento,*

75 Cal.App.2d 436, 449 [171 P.2d 477]; *Web Service Co.* v. *Spencer,* 252 Cal.App.2d 827, 837 [61 Cal.Rptr. 493]; *Sivertsen* v. *City of Menlo Park,* 17 Cal.2d 197, 201 [109 P.2d 928]; 45 Cal.Jur.2d, Statutes, § 115, p. 624.) ■ The presumption is in favor of the reasonableness of the fee. (*County of Plumas* v. *Wheeler,* 149 Cal. 758, 765 [87 P. 909].)

■ Common sense requires that, in analyzing and applying the rules as stated in an ordinance of the kind under scrutiny, a county is not limited to the exact amount which may constitute the expense of regulation for a given time. The application of sound judgment and probabilities according to the best honest viewpoint of informed officials is all that is initially required. (*County of Plumas* v. *Wheeler, supra,* 149 Cal. 758; *Urban* v. *Riley,* 21 Cal.2d 232 [131 P.2d 4].)

In its memorandum of opinion the court in the instant case said: "After a period of operation the Board of Supervisors may want to review the fee charged to be certain that work experience and actual costs in fact do justify the fees levied. If experience shows them to be unreasonable and they are not adjusted plaintiffs may feel they should return to Court."

■ It should not be forgotten that the party who attacks the sufficiency of the evidence must show that there is no substantial evidence to support the challenged finding. (*Clewett* v. *Clewett,* 136 Cal.App.2d 913 [289 P.2d. 512].) ■ For when a record on appeal shows substantial evidence in support of the judgment it is all that is required, and this rule applies even when there is contradictory evidence. (*Kaichen* v. *Showers,* 146 Cal.App.2d 804 [304 P.2d 137].)

The respondents claim that in addition to the estimated cost of $50.90 mentioned above it was also proper to consider that the cost of prosecution of a mobilehome owner if he should fail to pay the license required of him would be $83.10 per case on the average. ■ The court's memorandum of decision properly eliminated the monetary value of fire protection and the services of the sheriff and appropriate general law enforcement officers as additional items of cost.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.